UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| MARIA RODRIGUEZ-MORFIN,<br><br>Petitioner,<br><br>v.<br><br>JERRY HOWELL,[1] et al.,<br><br>Respondents. | Case No. 2:19-cv-02177-GMN-VCF<br><br>**ORDER** |

Maria Rodriguez-Morfin is a Nevada prisoner who was convicted of, *inter alia*, trafficking in a controlled substance and is serving a sentence of 10 to 25 years. (ECF Nos. 23-3 at 53; 24-9.) Rodriguez-Morfin filed a petition for writ of habeas corpus under 28 U.S.C. § 2254, alleging that counsel failed to advise her of her right to appeal and to move to suppress evidence. (ECF No. 10.) This court denies Rodriguez-Morfin's habeas petition, denies her a certificate of appealability, and directs the clerk of the court to enter judgment accordingly.

**I.   BACKGROUND**[2]

Following a DEA Task Force surveillance of April Valencia in Reno, Nevada, on July 17, 2013, law enforcement observed a green Volkswagen Jetta, driven by Rodriguez-Morfin, park next to Valencia's vehicle and Valencia speak with Rodriguez-Morfin through her vehicle's window.

---

[1] The state corrections department's inmate locator page states that Rodriguez-Morfin is currently incarcerated at Florence McClure Women's Correctional Center. Jerry Howell is the current warden for that facility. At the end of this order, this court directs the clerk to substitute Jerry Howell as a respondent for the prior respondent D.W. Neven, pursuant to rule 25(d) of the Federal Rules of Civil Procedure.

[2] This court makes no credibility findings or other factual findings regarding the truth or falsity of this summary of the evidence from the state court. This court's summary is merely a backdrop to its consideration of the issues presented in the case. Any absence of mention of a specific piece of evidence does not signify this court overlooked it in considering Rodriguez-Morfin's claims.

(ECF No. 22-8 at 43–46, 74.) Valencia and Rodriguez-Morfin left in tandem in their respective vehicles. (*Id.* at 46.) Meanwhile, a confidential informant, who had been conversing with Valencia, informed law enforcement that Rodriguez-Morfin had narcotics in her vehicle and that Valencia and Rodriguez-Morfin were driving to Fernley, Nevada to sell them. (*Id.*)

After Rodriguez-Morfin's vehicle was seen following another vehicle too closely, law enforcement pulled her over. (ECF No. 22-8 at 94.) Rodriguez-Morfin signed a pre-printed consent waiver to search her vehicle. (*Id.* at 97.) A police service dog sniffed the vehicle and alerted "for the odor of narcotics." (*Id.* at 97–99.) Law enforcement's search of the vehicle yielding nothing. (*Id.* at 99.) A search warrant was obtained the following day, July 18, 2013, and 83.4 grams of methamphetamine and a BB gun were found in a hidden trap in the vehicle. (*Id.* at 47, 49; ECF No. 23-1 at 63.) The search warrant was based on "[t]he things Valencia had told [law enforcement] during [her] interview, and the fact that the canine alerted to that vehicle." (ECF No. 22-8 at 75.)

A jury found Rodriguez-Morfin guilty of trafficking in a controlled substance, possession of a controlled substance for the purpose of sale, and conspiracy to violate the Uniform Controlled Substances Act. (ECF No. 23-3 at 53.) Rodriguez-Morfin did not file a direct appeal, and the Nevada Court of Appeals affirmed the denial of her state habeas petition. (ECF No. 34-8.)

## II. GOVERNING STANDARDS OF REVIEW

### A. Antiterrorism and Effective Death Penalty Act ("AEDPA")

28 U.S.C. § 2254(d) sets forth the standard of review generally applicable in habeas corpus cases under AEDPA:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)). A state court decision is an unreasonable application of clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254(d) "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75 (quoting *Williams*, 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable." *Id.* (quoting *Williams*, 529 U.S. at 409–10) (internal citation omitted).

The Supreme Court has instructed that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has stated "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the standard as a "difficult to meet" and "highly deferential standard for evaluating

state-court rulings, which demands that state-court decisions be given the benefit of the doubt" (internal quotation marks and citations omitted)).

### B.  Effective assistance of counsel

In *Strickland v. Washington*, the Supreme Court propounded a two-prong test for analysis of claims of ineffective assistance of counsel requiring the petitioner to demonstrate (1) that the attorney's "representation fell below an objective standard of reasonableness," and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. 668, 688, 694 (1984).  A court considering a claim of ineffective assistance of counsel must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.  The petitioner's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.  Additionally, to establish prejudice under *Strickland*, it is not enough for the habeas petitioner "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693.  Rather, the errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

Where a state district court previously adjudicated the claim of ineffective assistance of counsel under *Strickland*, establishing that the decision was unreasonable is especially difficult. *See Harrington*, 562 U.S. at 104–05.  In *Harrington*, the United States Supreme Court clarified that *Strickland* and § 2254(d) are each highly deferential, and when the two apply in tandem, review is doubly so. *Id.* at 105; *see also Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (internal quotation marks omitted) ("When a federal court reviews a state court's *Strickland* determination under AEDPA, both AEDPA and *Strickland*'s deferential standards apply; hence,

the Supreme Court's description of the standard as doubly deferential."). The Supreme Court further clarified that, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.

## III.    DISCUSSION

### A.    Ground 1

In ground 1, Rodriguez-Morfin alleges that her Fifth, Sixth, and Fourteenth Amendment rights were violated because counsel failed to advise her of her right to appeal. (ECF No. 10 at 3.)

#### 1.    Background information

Defense counsel testified at the post-conviction evidentiary hearing that he discussed Rodriguez-Morfin's right to appeal with her before and during her trial. (ECF No. 31-27 at 75–76.) In fact, counsel discussed potential appealable issues with her "during trial when an issue would come up." (*Id.* at 76.) Rodriguez-Morfin never told counsel she wanted to appeal, and counsel did not believe there were any meritorious issues to present in an appeal. (*Id.* at 77, 79.)

Contrarily, Rodriguez-Morfin testified that counsel never had a conversation with her about her right to appeal and if she had known she had that right, she would have exercised it. (*Id.* at 107–08.) The state district court found Rodriguez-Morfin incredible. (*Id.* at 146.)

#### 2.    State court determination

In affirming the denial of Rodriguez-Morfin's state habeas petition, the Nevada Court of Appeals held:

> Rodriguez-Morfin claimed counsel was ineffective for failing to inform her of the right to appeal. When a conviction is the result of a jury trial, trial counsel has an affirmative duty to inform the defendant of the right to appeal, the procedures for filing an appeal, and the advantages and disadvantages of filing an appeal. *Lozada v. State*, 110 Nev. 349, 356, 871 P.2d 944, 948 (1994), *rejected on other grounds by Rippo v. State*, 134 Nev. 411, 426 n.18, 423 P.3d 1084, 1100 n.18

> (2018). Moreover, trial counsel "has a duty to perfect an appeal when a convicted defendant expresses a desire to appeal or indicates dissatisfaction with a conviction." *Id.* at 354, 871 P.2d at 947. Prejudice is presumed when counsel's "conduct completely denies a convicted defendant an appeal." *Id.* at 357, 871 P.2d at 949.
>
> After hearing testimony at evidentiary hearing, the district court found counsel discussed Rodriguez-Morfin's right to appeal with her several times, and told her about potential appealable issues. The district court also found Rodriguez-Morfin never informed counsel she wanted to appeal. Rodriguez-Morfin testified at the evidentiary hearing she knew how to get ahold of counsel. Accordingly, the district court concluded counsel was not deficient with regard to Rodriguez-Morfin's appeal rights. Substantial evidence supports the decision of the district court, and we conclude the district court did not err by denying this claim.

(ECF No. 34-8 at 3.)

### 3. Conclusion

The *Strickland* "test applies to claims . . . that counsel was constitutionally ineffective for failing to file a notice of appeal." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). When counsel "disregards specific instructions from the defendant to file a notice of appeal," counsel has acted unreasonably. *Id.* However, "where the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken," the question is "whether counsel in fact consulted with the defendant about the appeal." *Id.* at 478. Consulting means "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id.* "[C]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal . . . , or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 480. "[T]o show prejudice [from a lack of consultation], a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.* at 484.

Rodriguez-Morfin fails to demonstrate that counsel failed to consult with her about an appeal. Counsel testified that he discussed Rodriguez-Morfin's ability to appeal on numerous occasions, including discussing potential appealable issues, and Rodriguez-Morfin's testimony that these discussions never took place was found to be incredible. *See Rice v. Collins*, 546 U.S. 333, 341–42 (2006) ("Reasonable minds reviewing the record might disagree about . . . credibility, but on habeas review that does not suffice to supersede the trial court's credibility determination."). Accordingly, the Nevada Court of Appeals' determination that substantial evidence supported the state district court's decision regarding a lack of deficiency on the part of counsel constituted an objectively reasonable application of *Strickland*'s performance prong. 466 U.S. at 688. Rodriguez-Morfin is not entitled to federal habeas relief for ground 1.[3]

**B.   Ground 2**

In ground 2, Rodriguez-Morfin alleges that her Fifth, Sixth, and Fourteenth Amendment rights were violated because counsel failed to move to suppress the methamphetamine on grounds that her consent to search was involuntary because she was not alerted to the search's intent or scope and the use of a police service dog exceeded the scope of her consent. (ECF No. 10 at 6–7.)

**1.   Background information**

Lieutenant Corey Solferino testified at the post-conviction evidentiary hearing that he initiated the traffic stop of Rodriguez-Morfin on July 17, 2013. (ECF No. 31-27 at 11.) A juvenile male was in the passenger seat of the vehicle and helped translate for Rodriguez-Morfin, who initially said her name was Christine Vargas. (*Id.* at 12, 35–36.) Lieutenant Solferino requested a

---

[3] Rodriguez-Morfin requests an evidentiary hearing on this ground. (ECF No. 10 at 4.) Rodriguez-Morfin fails to articulate what evidence would be presented at an evidentiary hearing, especially since a thorough evidentiary hearing was held by the state district court on this issue. Rodriguez-Morfin's request is denied.

7

search of the vehicle because Rodriguez-Morfin was unable to give the vehicle's registered owner's name. (*Id.* at 12–13.)  After confirming that Rodriguez-Morfin could read and write Spanish, Lieutenant Solferino gave Rodriguez-Morfin "a State of Nevada consent to search form that [was] written in English and Spanish." (*Id.* at 13–14, 37.)  Lieutenant Solferino observed Rodriguez-Morfin read and sign the form. (*Id.* at 14, 41, 43.)  Lieutenant Solferino testified that the form did not indicate the purpose of the search or "indicate that a dog could be used during the search." (*Id.* at 17, 56.)  However, the form stated that the search "may include any luggage, containers or items located in the interior and/or exterior of the vehicle" and "any compartments which may need to be accessed by the use of tools" and that the signer understood that he or she had "the right to refuse to consent to the search." (ECF No. 34-1 at 103.)

      Lieutenant Solferino testified that Rodriguez-Morfin saw him retrieve the police service dog, but Rodriguez-Morfin did not ask about or object to the dog. (ECF No. 31-27 at 45.)  Following the dog's alert in the backseat of the vehicle, Lieutenant Solferino testified he had "probable cause to believe there were narcotics in the car." (*Id.* at 33.)  Law enforcement towed Rodriguez-Morfin's vehicle because they "could not contact the registered owner of the vehicle, no parties present on the scene had a valid drivers [sic] license," and they "knew with a fair amount of certainty there was a trap in the car" containing narcotics. (*Id.* at 52–53.)

      Rodriguez-Morfin testified that she did not know the purpose of the search at the time she gave consent, did not know she could revoke her consent, and had no issue giving consent because she was unaware there were narcotics located in the vehicle.[4] (*Id.* at 118–120.)  And Rodriguez-

---

[4] At the post-conviction evidentiary hearing, Rodriguez-Morfin implied that the narcotics belonged to the juvenile passenger, her ex-boyfriend's nephew, and she was unaware of their existence. (*See* ECF No. 31-27 at 87–88.)

8

Morfin's counsel testified he did not entertain any motions to suppress because he did not feel there was any basis to do so. (*Id.* at 66, 75.)

### 2. State court determination

In affirming the denial of Rodriguez-Morfin's state habeas petition, the Nevada Court of Appeals held:

> Rodriguez-Morfin claimed counsel was ineffective for failing to file a motion to suppress. Specifically, she claimed the consent form did not inform her that a canine would be used in the search. Further, she claimed the officer did not explain the purpose of the search to her before seeking her consent.
>
> When determining the scope of a search that is based on a suspect's consent, the district court must consider the totality of the circumstances and "whether an objectively reasonable officer would have believed that the scope of the suspect's consent permitted the action in question." *State v. Ruscetta*, 123 Nev. 299, 304, 163 P.3d 451, 454 (2007). "Relevant considerations with respect to the scope of consent include any express or implied limitations regarding the time, duration, area, or intensity of police activity to accomplish the stated purpose of the search, as well as the express object of the search." *Id.* at 302-03, 163 P.3d at 454 (internal quotation marks omitted). "A general consent to search is unqualified, absent any announcement of the object of the search or other express limitation, subject only to the bounds of reasonableness." *State v. Becerra*, 366 P.3d 567, 569 (Ariz. Ct. App. 2016); *see also Ruscetta*, 123 Nev. at 304 n.20, 163 P.3d at 454 n.20, citing *United States v. Strickland*, 902 F.2d 937, 941 (11th Cir. 1990) ("When an individual gives a general statement of consent without express limitations, the scope of permissible search is not limitless. Rather it is constrained by the bounds of reasonableness: what a police officer could reasonably interpret the consent to encompass.").
>
> After the evidentiary hearing, the district court found, based on her testimony and the officer's testimony, that Rodriguez-Morfin understood the contents of the consent form, its significance, and the consequences of signing it. The consent form, which was provided in Spanish, informed her she could refuse to consent to the search and she did not have to sign it. Further, the consent form stated the officer could search and use tools to access compartments in the vehicle. Rodriguez-Morfin signed the consent form. The district court also found that Rodriguez-Morfin testified she saw the canine outside the vehicle and did not object, and she testified she would not have objected because she had no concern with the dog search the vehicle.
>
> Based on this evidence, the district court concluded Rodriguez-Morfin validly consented to the search and did not limit the scope of the search. Further,

9

the district court concluded the officer's use of the canine to search was within the bounds of reasonableness and within the scope of Rodriguez-Morfin's consent. Therefore, the district court concluded counsel was not deficient for failing to file a motion to suppress.

> [FN2] We note that a search warrant was issued before any evidence was seized.

Substantial evidence supports the decision of the district court, and we conclude the district court did not err by denying this claim.

(ECF No. 34-8 at 4–5.)

### 3. Conclusion

"The standard for measuring the scope of a suspect's consent [to a search] under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Florida v. Jimeno*, 500 U.S. 248, 251 (1991); *see also United States v. Gutierrez-Mederos*, 965 F.2d 800, 803 (9th Cir. 1992) ("In measuring the limits of appellant's consent, we must assess what a reasonable person would have understood by the exchange between him and the trooper."); *State v. Ruscetta*, 123 Nev. 299, 304–05, 163 P.3d 451, 454–55 (2007) (following *Jimeno* and concluding that "the proper analysis in cases involving consensual vehicular searches is a traditional objective reasonableness approach, which requires an examination of the totality of the circumstances").

Rodriguez-Morfin does not dispute that she read and signed a consent form allowing her vehicle to be search. In fact, Rodriguez-Morfin testified that she did not object to the search because she was unaware that there were narcotics in the vehicle. The consent form indicated that the search may include compartments which may need to be accessed with tools. The form also indicated that Rodriguez-Morfin could refuse consent, and, importantly, Rodriguez-Morfin did not object to or limit the search after seeing Lieutenant Solferino retrieve the police service dog. *See*

*United States v. Cannon*, 29 F.3d 472, 477 (9th Cir. 1994) ("Failure to object to the continuation of a vehicle search after giving general consent to search 'is properly considered as an indication that the search was within the scope of the initial consent.'" (citation omitted)).  Based on this evidence, the Nevada Court of Appeals reasonably determined that there was substantial evidence supporting the state district court's determination that Rodriguez-Morfin's consent was valid, was not limited in scope, and included the use of the police service dog.

Consequently, because the scope of the search was objectively reasonable given the totality of the circumstances, a motion arguing for the suppression of the methamphetamine found during that search would not have been meritorious. *See Ortiz-Sandoval v. Clarke*, 323 F.3d 1165, 1170 (9th Cir. 2003) ("[P]etitioner must show that (1) the overlooked motion to suppress would have been meritorious and (2) there is a reasonable probability that the jury would have reached a different verdict absent the introduction of the unlawful evidence.").  Accordingly, the Nevada Court of Appeals' determination that substantial evidence supported the state district court's decision regarding a lack of deficiency on the part of counsel constituted an objectively reasonable application of *Strickland*'s performance prong. 466 U.S. at 688.  Rodriguez-Morfin is not entitled to federal habeas relief for ground 2.

### IV.    CERTIFICATE OF APPEALABILITY

This is a final order adverse to Rodriguez-Morfin.  Rule 11 of the Rules Governing Section 2254 Cases requires this court issue or deny a certificate of appealability (COA).  As such, this court has *sua sponte* evaluated the remaining claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864–65 (9th Cir. 2002).  Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right."  With respect to claims rejected on

the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether this court's procedural ruling was correct. *Id*.

Applying these standards, this court finds that a certificate of appealability is unwarranted.

## V. CONCLUSION

In accordance with the foregoing, **IT IS THEREFORE ORDERED**:

1. The petition (ECF No. 10) is DENIED.

2. A certificate of appealability is DENIED.

3. The clerk of the court is directed to substitute Jerry Howell for respondent D.W. Neven, enter judgment accordingly, and close this case.

Dated: December 8, 2021

_____
Gloria M. Navarro, Judge
United States District Court